■ IMPERIAL OUTFITTERS TO LARGE MEN, INC., Plaintiff, v GENESCO, INC., Respondent-Appellant, and 48-48 ASSOCIATES, INC., Appellant-Respondent. — Order and judgment (one paper), Supreme Court, New York County (Hilda G. Schwartz, J.), entered December 20, 1982, and order (same court) entered February 1, 1983 which granted reconsideration and upon reconsideration adhered to its prior determination as contained in the order and judgment, modified, on the law, without costs, to dismiss Genesco's second cross claim against defendant 48-48 Associates, to declare that under the modified lease agreement 48-48 Associates is entitled to collect from Genesco additional rent both for increases in the cost-of-living index and real estate taxes, and otherwise affirmed. On October 4, 1968 the 48th St. Realization Corp., the predecessor landlord to defendant 48-48 Associates, Inc. (48-48), and Genesco, Inc., as tenant, entered into a lease of the subject premises pursuant to which a Genesco subsidiary, Whitehouse & Hardy, was to sell men's clothing, shoes and related items. Article 43 of the lease provided for additional rent (rent in addition to the base rent) to be paid by Genesco in the amount of 12% of any increase in real estate taxes, and further provided that "If additional percentage rental is paid by Tenant, the Landlord shall only receive either said addtional [*sic*] percentage rental of 12% of the amount of said increase in taxes, whichever is larger." Pursuant to article 45 of the lease, Genesco agreed to pay as additional rent an amount of money based on a percentage of its gross sales at the demised premises pursuant to formula. In 1970 Genesco wanted to sublease the premises and located a prospective subtenant, plaintiff Imperial Outfitters to Large Men, Inc. (Imperial), which specialized in large men's clothing. Since the landlord was no longer to be collecting an additional percentage rental based on the gross sales of Whitehouse & Hardy, an established entity with substantial sales, it negotiated a modification of the prime lease with Genesco in consideration for its consent to the sublease to Imperial. Paragraph 1 of the April 14, 1970 modification agreement provided that "Article 45 [of the prime lease] is hereby deleted in its entirety, thus eliminating any percentage rent payable under the Lease." Paragraph 2 added to the prime lease a provision increasing the base rent by a percentage equal to any percentage increase in the cost-of-living index published by the United States Bureau of Labor Statistics. We find that the modification agreement was clearly intended to eliminate any percentage rent payable under the lease, and thus the provision of article 43 which limited additional rent to the higher of additional percentage rental or 12% of any increase in real estate taxes no longer was applicable. This conclusion is inescapable in the face of the provision of the modification agreement explicitly "eliminating any percentage rent payable under the Lease." The modification agreement's provision for an increase in *base* rent keyed to the cost-of-living index was not "additional

percentage rental" as the term was used in article 43 of the prime lease, and as apparently understood as a term of art in landlord and tenant law. (See 1 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 364.) Finally, we observe that the then-proposed sublease between Genesco and Imperial was annexed as an exhibit to the modification agreement, and that article 40 of the sublease is identical to article 43 of the prime lease except that one crucial sentence is omitted from the sublease — and that is the sentence providing that the landlord is only entitled to the higher of additional percentage rental paid by the tenant or 12% of the increase in taxes. Thus the present landlord 48-48 is entitled to collect from Genesco both the increase in base rent keyed to the cost-of-living index *and* the percentage of increased real estate taxes, and a declaration should have been made accordingly. The contrary conclusion reached by Special Term was erroneous. Partial summary judgment was properly granted to Genesco on its first cross claim against 48-48 alleging overcharges on electricity. Annexed to the judgment is a schedule of 90 bills for electricity rendered by 48-48, the amounts that should have been charged under the lease, and the amounts actually charged. The figures are supported by deposition and affidavits of experts, one of whom was, and apparently still is, responsible for computing and submitting the electrical bills to Genesco on behalf of 48-48. None of the calculations incorporated in the judgment is specifically disputed by competent evidence, and therefore partial summary judgment in the amount stated should be affirmed. The Statute of Limitations defense raised by 48-48 is without merit. Genesco's first cross claim against 48-48, raised in 1980 in an amended pleading, arises out of the same transaction as the complaint by Imperial against Genesco and 48-48, and thus is deemed to have been interposed in 1976 when the complaint was served. (CPLR 203, subd [c]; *Seligson v Chase Manhattan Bank, Nat. Assn.,* 50 AD2d 206; *Colichio v Bailey,* 77 AD2d 694.) Moreover, Genesco first raised the cross claim on an indemnity theory in its original answer served in 1977, and, therefore, the first cross claim in the amended pleading is deemed to have been interposed in 1977. (CPLR 203, subd [e].) Since the electricity overcharges date back to July, 1973, recovery is not barred by the six-year contractual Statute of Limitations. (CPLR 213, subd 2.) Concur — Sandler, J. P., Sullivan, Ross, Carro and Milonas, JJ.